[Civ. No. 61915. Second Dist., Div. Five. Nov. 25, 1981.]

DON WILSON BUILDERS, Plaintiff and Appellant, v.
CITY OF TORRANCE et al., Defendants and Respondents.

116

**COUNSEL**

Zobrist & Stahl and Robert E. Jenks, Jr., for Plaintiff and Appellant.

Stanley E. Remelmeyer, City Attorney, Nutter, Bird, Marella, Boxer & Wolpert, Ralph H. Nutter, George R. Hedges, John H. Larson, County

Counsel, and Paula A. Snyder, Deputy County Counsel, for Defendants and Respondents.

---

OPINION

RALPH, J.*—Plaintiff appeals from a judgment in which the court below granted defendants' motion for judgment under Code of Civil Procedure section 631.8, subdivision (a), in favor of defendants City of Torrance (hereafter City) and Torrance Unified School District of Los Angeles County (hereafter School District).

Except for oral testimony by the president of the corporate plaintiff, and documentary evidence, the action for declaratory relief was tried to the court sitting without a jury on a stipulation of facts, which in pertinent part are summarized below:

(1) Corporate plaintiff, a developer of real property, formerly owned real property consisting of 10 acres located in the City of Torrance, County of Los Angeles, bordered by 236th and 238th Streets on the north and south and by Ocean Avenue and Adolph Street on the east and west, commonly referred to as the "Ocean Avenue School site," and adjacent to the City's Lago Seco Park.

(2) In 1962, plaintiff sold the property to the School District for $326,395.68 but no school building was ever erected thereon and by 1974 the declining school enrollment rendered the site superfluous and it was agreed that the City would purchase the school site without rezoning.

(3) In 1975, the board of education of the School District (Board) adopted unanimously a resolution which stated that the Ocean Avenue School site was no longer needed for school purposes and that the Board intended to sell the site to the City for $1 million and prescribed the terms of sale. On August 26, 1975, the Torrance City Council approved the purchase of the property.

(4) Notice of the adoption of the Board's resolution was given, as required by section 16203 of the Education Code, which specified

---

*Assigned by the Chairperson of the Judicial Council.

conditions precedent to sale pursuant to article 5, chapter 2, division 12, of the Education Code.

(5) The deed to the City was recorded August 29, 1975, and the full purchase price paid to the School District.

(6) The Torrance City Council, on November 25, 1975, decided that only six of the ten acres would be needed for park purposes and that the remaining four acres should be made available for sale.

(7) In 1976 the four acres were rezoned and a bid circular was prepared but never circulated, and the property has not yet been sold.

(8) By letter, dated December 23, 1976, plaintiff advised the City and the School District that it wished to purchase the property and that its status as "former owner" gave certain rights under the Education Code. Thereafter, correspondence between the parties continued until this lawsuit was filed August 17, 1978.

In addition to the stipulation of facts, the court at trial found that there was no conspiratorial agreement between the City and the School District to dispose of the property to a third party for profit.

The trial court, on the basis of the stipulated facts and testimony at trial, concluded as a matter of law: (1) Statutes which govern the transaction were former Education Code section 16201 et seq. and section 16051 et seq., as appeared in 1975; (2) Government Code section 54220 has no application to this transaction, casts no duties on the parties, and is no more than an expression of a legislative belief that there is a deficiency in open space land and land for recreational use; (3) The Education Code created two alternative methods for a school district to dispose of surplus land: under Education Code section 16051 et seq. or under Education Code section 16201 et seq. The right of a former owner to reacquire land he previously owned was covered under section 16072 of the Education Code, but this right applied only to sales made in accordance with procedures set out in Education Code section 16051 et seq. and did *not* apply to sales made pursuant to Education Code section 16201 et seq. The School District utilized Education Code section 16201 et seq. and proceeded properly in accord therewith; (4) Neither Education Code section 16201 nor any other applicable section required the School District to ascertain, oversee or police the purposes for which

real property was being acquired by the public entity; (5) Plaintiff, therefore, had no right to purchase the subject property because the sale was conducted under article 5 of chapter 2 of division 12 of the Education Code (§ 16201 et seq.) and therefore the complaint states no cause of action because article 2.1 of chapter 2, division 12, of the Education Code *does not* apply to this transaction; and (6) Neither City nor the School District had an obligation to offer the property to plaintiff because the transaction was conducted under provisions of article 5, chapter 2, division 12, of the Education Code and *not* conducted under provision of article 2 (§ 16051 et seq. of Ed. Code).

## CONTENTIONS

Plaintiff contends that the court below, by concluding that there is no cause of action, has deprived it of an opportunity to have a declaration of its rights as to whether it had a right as a prior owner to acquire the four acres being sold by the City at the price paid by the City for the property, and whether it has the right of first refusal at the highest bid price obtained in the bidding now contemplated by the City.

We agree with plaintiff that a ruling that there is no cause of action does result in the conclusion that the plaintiff has no "right as a prior owner" to acquire at any price the four acres being sold by the City. We do not agree that plaintiff has been deprived of its opportunity to have a declaration of its "rights." Plaintiff had a trial below, put on evidence, and rested; thereby having every opportunity to produce all its evidence. The court below, in its judgment, decided that the transaction between defendants herein was conducted properly pursuant to Education Code section 16201 et seq., and that plaintiff's status as a former owner was accorded no statutory rights as a former owner by those sections. We agree and affirm the judgment.

Issue

*Whether Plaintiff Proved a Cause of Action for Declaratory Relief.*

At the outset, let us state, we do not interpret the Code of Civil Procedure section 631.8 motion as a demurrer, the sustaining of which without leave, leads to dismissal *without* a trial. As we view it, "Code of Civil Procedure section 631.8 . . . is intended in a proper case to eliminate the necessity of defense evidence." (*Rodde v. Continental Ins.*

*Companies* (1979) 89 Cal.App.3d 420, 423 [152 Cal.Rptr. 500].) We are, therefore, determining whether there is substantial evidence to support the decision (*Rodde* v. *Continental Ins. Companies, supra*, p. 424), and in that sense, view Code of Civil Procedure section 631.8 as determining whether there was sufficient evidence to "*prove* plaintiff's cause(s) of action."

## A. SCHOOL DISTRICT

In 1975, at the time of the transaction herein, the procedure for sale of real property owned by the school districts to other public agencies was governed by article 5, part 3, division 12, section 16201 et seq. of the Education Code, pertinent provisions of which are set out below:

Section 16201. "The governing boards of any school district may sell . . . to the federal government or its agencies, . . . or to any county, city and county, city or special district, or to any other school district . . . any real property belonging to the school district, and which is not or will not at the time of delivery of title or possession be needed for school classroom buildings by the district owning it, . . ."

Section 16202. "Any sale, exchange, lease or grant of an interest in real property by a school district pursuant to Section 16201 shall be upon such terms and conditions as the parties thereto may agree and may be entered into *without complying with any provisions of this code except as provided in this article.*" (Italics added.)

Also, in 1975, Education Code section 16203 required as conditions precedent to any sale, exchange or lease a resolution approved unanimously by board members authorizing the action and the publication of such resolution for the prescribed period of time.

By the express provisions of section 16201, article 5 applied only to public agencies and a sale to a private individual would not have been permissible thereunder.

Almost identical language may be found today in article 12 of the Education Code sections 39500, 39501 and 39502.

Another procedure governing the "sale or lease of real property" in 1975 was found in article 2, chapter 2, division 12, commencing with section 16051 of the Education Code, which read in part: "The govern-

ing body of any school district may sell any real property belonging to the school district ... together with any personal property located thereon ... which is not or will not be needed by the district ... at the time of delivery of title or possession. The sale or lease ... shall be made in the manner provided by this article (commencing at Section 16051)."

Education Code section 16057 provided a mechanism for broker's commission, and bidding procedures were outlined in sections 16060, 16061, 16063 and 16064.

Article 2.1 of Education Code section 16072 permitted a "former owner from whom the district acquired the property ... the right ... to purchase the property subject to the provisions of this article."

Essentially, the same language set out above in section 16051 et seq. may be found today in the Education Code, article 4, commencing with section 39360, entitled Sale or Lease of Real Property.

Section 16072 of the Education Code, as it appeared in 1975, was repealed, but reenacted as subdivision (c) of section 39363.5 which now reads, as follows:

Section 39363.5 *"Priorities and procedures for the sale or lease with option to purchase.* Except as provided for in Article 2 (commencing with Section 39030) of Chapter 1 of this part, the sale or lease with an option to purchase of real property by a school district shall be in accordance with the following priorities and procedures: ... (c) Third, the property shall be made available in writing to the former owner, ... ."

That a sale or lease by a school district to public agencies is not restricted to the provisions commencing with article 4, section 39360 of the Education Code, is not ambiguous in language in article 12, section 39501 of the Education Code, which states: "Any sale, exchange, lease or grant of an interest in real property by a school district pursuant to Section 39500 shall be upon such terms and conditions as the parties thereto may agree and may be entered into without *complying with any provisions of this code except as provided in this article.*" (Italics added.)

■ Thus, there is a clear expression of legislative intent in existence in 1975 (in Ed. Code, § 16201 et seq. and today in Ed. Code,

§§ 39500-39503) that there is no requirement for a school board to give the right of first refusal to a former owner when a sale to another public agency is contemplated by a school district.

 The parties stipulated that the resolution of the school Board was adopted in compliance with the 1975 requirements, as outlined in article 5, chapter 2, division 12, of the Education Code. The resolution being proper, the ruling by the trial court in granting defendants' motion for judgment under Code of Civil Procedure section 631.8, subdivision (a), was correct.

## B. CITY

Plaintiff's prime complaint against the City appears to be that when the School District conveyed the property to the City, both the City and the School District knew that the City would put the property on the market for profit.

This transfer of real property was not governed by statutes which gave rise to any duty whatsoever on the part of the City or the school Board to make an offer of first refusal to plaintiff as a prior owner, as discussed in paragraph A above.

 Further, a City which has acquired property for public use may divert lawfully that property to some other use (*Newport v. City of Los Angeles* (1960) 184 Cal.App.2d 229, 239 [7 Cal.Rptr. 497], hg. den.) or "public use may be abandoned" (*Arechiga v. Housing Authority* (1958) 159 Cal.App.2d 657, 660 [324 P.2d 973], hg. den.). "The reason underlying this principle is that it enables public bodies to meet changing conditions." (*Ibid.*)

 The court below has found that there was no conspiracy. If the finding is supported by substantial evidence, the appellate court will not reverse. (*Rodriguez v. North American Rockwell Corp.* (1972) 28 Cal. App.3d 441, 447 [104 Cal.Rptr. 678].) A review of the record shows no trace of a conspiracy between the City and the School District.

There is, therefore, no cause of action proved against the City.

In summary, no cause of action was proved against either defendant because applicable statutory provisions did not mandate that plaintiff

be given the right of first refusal as a prior owner at the time of the sale to the City in 1975, and no "conspiracy" between the City and the School District deprived plaintiff of any rights.

The judgment is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.

On December 14, 1981, the opinion was modified to read as printed above.